IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01569-PAB

ANGEL QUINTANA,

    Applicant,

v.

TRAVIS TRANI and
ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

### ORDER TO DISMISS IN PART AND TO ANSWER

---

    Applicant, Angel Quintana, a state prisoner in the custody of the Colorado Department of Corrections, is currently incarcerated at the Colorado State Penitentiary in Cañon City, Colorado.  Applicant initiated this action by filing *pro se* an Application for a Writ of Habeas Corpus.  He is serving sentences for judgments of conviction imposed by the District Court for the City and County of Denver, Colorado in case 04CR2291.

    On July 2, 2015, Magistrate Judge Gordon P. Gallagher directed Respondents to file a Pre-Answer Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).  Respondents submitted a Pre-Answer Response on August 17, 2015 [Docket No. 12].  Applicant filed a Reply on September 3, 2015 [Docket No. 13].

    The Court must construe the Application liberally because Applicant is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court does not

"assume the role of advocate for the *pro se* litigant." *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court will dismiss the action in part and will order Respondents to file an answer addressing the merits of the remaining claims.

## I.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

On direct appeal, the Colorado Court of Appeals described the relevant factual background for Mr. Quintana's convictions as follows:

> I. Background
>
> After B.M. broke up with defendant at a local restaurant in Denver, B.M. and her sister, S.P. (the victims), drove to a different restaurant where they socialized with others in the restaurant's parking lot. B.M. was talking with T.S., a male friend of hers, in her car. T.S. was sitting in the driver's seat, and B.M. was crouched alongside him, "in the door jamb," showing him the televisions that were in the car. S.P. was in the passenger's seat of the car talking to another man. Shortly thereafter, B.M. saw defendant rapidly approaching, "yelling, cursing," and shooting at the car. Defendant shot approximately four bullets, one of which hit the window of the car door. T.S. jumped out of the car and ran away. As he was running away, defendant fired a shot in his direction, but T.S. was not hit.
>
> Defendant grabbed B.M., threw her into the driver's seat, got into the backseat of the car, and told her to drive. Evidence was conflicting whether defendant ordered S.P. to get into the car or whether S.P. was already in the car then. In any event, S.P., who was in the passenger's seat, screamed at defendant, asking him what he was doing, and in response, defendant hit her in the mouth. B.M., having driven a few feet, put the car in park, and told S.P. to get out of the car. When B.M. attempted to exit the car, defendant shot her in the hip. B.M. tried to run, but she fell down because her leg was numb from the gunshot wound. As S.P. came around the car to see if B.M. was okay, defendant picked up B.M. and put her in the passenger's seat of the car. He then put S.P. in the backseat of the car.
>
> Defendant drove the victims to a deserted field, put on gloves, and said that he had to kill B.M., because she had "f***** up" and tried "to play him," meaning that she had "made him feel stupid." However, defendant had no more bullets. B.M. said she was sorry and asked him to take her to the hospital. Defendant refused and instead took the victims to his mother's house where B.M. began "shaking really bad" and begged defendant to take her to the hospital. Eventually, defendant agreed to take B.M. to the hospital

2

> with the understanding that she would tell the police that she was shot in a drive-by shooting.
>
> Initially, both victims told the police that B.M. had been shot in a drive-by shooting. However, in a second interview with the police, B.M. admitted that defendant shot her, but did not provide defendant's last name.
>
> Defendant was charged with one count of criminal attempt to commit first degree murder against B.M., one count of first degree assault against B.M., and two counts of second degree kidnaping with a deadly weapon (one count against B.M. and one count against S.P.). After a trial, the jury found defendant not guilty of attempt to commit first degree murder, but guilty of the lesser included offense of criminal attempt to commit manslaughter. The jury also found defendant guilty of the remaining charges. Defendant was sentenced to a total of forty-eight years in the custody of the Department of Corrections. This appeal followed.

Docket No. 12-3, pp. 2-4.

After unsuccessfully moving for a sentence reduction, Applicant filed a direct appeal. Docket No. 12-2 (opening brief). On October 28, 2010, the Colorado Court of Appeals affirmed. Docket No. 12-3 (*People v. Quintana*, No. 07CA1381 (Colo. Ct. App. Oct. 28, 2010) (not published)) *(Quintana I)*. On March 14, 2011, the Colorado Supreme Court denied *certiorari* review. Docket No. 12-5.

On January 3, 2012, Mr. Quintana filed a post-conviction motion pursuant to Rule 35 of the Colorado Rules of Criminal Procedure with the trial court. On August 17, 2012, the trial court denied the motion. On September 4, 2014, the Colorado Court of Appeals affirmed, Docket No. 12-8 (*People v. Quintana*, No. 12CA1926 (Colo. Ct. App. September 4, 2014) (not published)) (*Quintana II*). The Colorado Supreme Court denied *certiorari* on April 20, 2015. Docket No. 12-10.

On July 23, 2015, Applicant filed his present Application under § 2254 in this action raising the following claims:

(1) speedy trial rights were violated;

(2) ineffective assistance of counsel:

    (A) first trial counsel:

        (i)  failed to completely investigate all lines of defense;

        (ii) deceived applicant into believing that counsel would present an innocence-based defense and that prior counsel withdrew based upon a witness conflict;

        (iii) failed to share exculpatory information;

        (iv) misinformed the trial court about his reasons for withdrawing; and

        (v) violated applicant's federal constitutional speedy trial right;

    (B) second trial counsel:

        (i) failed to file a motion to dismiss based on violation of speedy trial right;

        (ii) failed to pursue exculpatory evidence such as witnesses;

        (iii) failed to object to Applicant's arrest as illegal when there was evidence that he was not at the crime scene;

        (iv) failed to investigate and present the defenses of actual innocence, complete denial, and alibi;

        (v) failed to prove that the evidence against applicant was not overwhelming, applicant was not at the scene, and law enforcement coached the witnesses;

        (vi) "refused to confront personal knowledge of the prosecution's misconduct on record";

        (vii) failed to investigate the prosecution's plan to turn trial counsel against applicant by introducing threatening jail letters against applicant;

(viii) "took part in hiding and not disclosing on record the fact that the prosecution presented him with a second coached letter of threats a week before trial started";

(ix) made a judicial admission of applicant's guilt to the jury, which infringed on applicant's right to plead guilty and testify;

(x) prejudiced applicant's appeal by "keep[ing] a lot of stuff of [sic] the record";

(xi) had a complete breakdown in communication;

(xii) violated the attorney-client privilege;

(xiii) failed to investigate law enforcement witnesses at the jail and court house;

(xiv) failed to challenge the imposition of three illegal sentence enhancers for a crime of violence, which were not determined by the jury;

(xv) was not prepared for trial, failed to properly cross-examine witnesses to discover the real reason for changing statements;

(xvi) threatened applicant by telling him of his plan to secure a conviction;

(xvii) refused to argue that no evidence supported the kidnapping charge;

(xviii) failed to investigate the contamination of the crime scene;

(xix) failed to challenge the inconsistent verdicts;

(xx) had numerous conflicts of interest;

(xxi) attempted to turn a favorable witness against applicant;

(xxii) failed to raise certain issues on direct appeal;

(xxiii) conflict of interest with the public defender's office; and

(C) he was denied the right to post-conviction counsel;

(3) applicant's due process rights to plead guilty and testify were violated because counsel imposed a guilt-based defense on Applicant instead of presenting defenses of actual innocence and alibi;

(4) applicant's right to due process was violated when the court enhanced his sentence without the sentence enhancers being properly pled and proved;

(5) applicant's right to due process was violated because his second degree kidnapping conviction is not supported by sufficient evidence;

(6) applicant's right to due process was violated because the guilty verdicts for attempted manslaughter and first degree assault are inconsistent;

(7) applicant's right to due process was violated because the trial court:

    (A) refused applicant's access to discovery and transcripts;

    (B) denied applicant's right to counsel;

    (C) allowed the prosecution to question applicant's attorneys; and

    (D) was biased against Applicant.

Docket No. 1.  For the reasons set forth below, the Amended Application will be dismissed in part as some of the claims have been procedurally defaulted.

## II. PROCEDURAL REQUIREMENTS FOR FEDERAL HABEAS CORPUS REVIEW

Before this Court can address the merits of Applicant's claim, it is necessary to examine whether this Application fulfills the applicable procedural requirements under the federal habeas corpus statute.

### A.  Limitations Period

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under the one-year limitations period applicable to such petitions.  In this regard, the federal habeas corpus laws impose a one-year limitations

period applicable to state prisoners. See 28 U.S.C. § 2244(d) (as amended). Respondents do not assert untimeliness in the present action.

### B. Constitutional Claims

It is well known that a state prisoner may not be granted federal habeas corpus relief unless he demonstrates that he is in custody in violation of the United States Constitution or federal law. See 28 U.S.C. § 2254(a). See also *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.") (internal citations omitted); *Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *Braley v. Shillinger*, 902 F.2d 20 (10th Cir. 1990). Mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. *Engle v. Isaac*, 456 U.S. 107, 119 (1982).

### C. Exhaustion Requirement

In addition, the provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review in accordance with the state's procedural requirements. See, e.g., *Castille v. Peoples*, 489 U.S. 346, 351 (1989). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice

that a federal claim is being asserted. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Harless*, 459 U.S. at 6 (internal citations omitted). A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (*per curiam*). Nonetheless, even if a state court fails to consider the constitutional claim, it is exhausted as long as the state court had the opportunity to address it.

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

However, "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available." *See O'Sullivan*, 526 U.S. at 847-48. Therefore, if a state articulates that a certain avenue for relief is not part of its standard appellate review process, it is not necessary for a defendant to pursue that avenue in order to exhaust state remedies. *See id.*

The State of Colorado has articulated that review in the Colorado Supreme Court is not part of the standard state appellate review process. More specifically, the Colorado Appellate Rules provide that:

> In all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1(a).

Pursuant to Colo. App. R. 51.1(a), the Court finds that review in the Colorado Supreme Court is not required to exhaust state remedies if the claim in question was presented fairly to the Colorado Court of Appeals. *See, e.g., Valenzuela v. Medina*, No. 10-02681-BNB, 2011 WL 805787 (D. Colo. Feb. 28, 2011). *Accord Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (Pennsylvania); *Adams v. Holland*, 330 F.3d 398, 401-03 (6th Cir. 2003) (Tennessee); *Randolph v. Kemna*, 276 F.3d 401, 404-05 (8th Cir. 2002) (Missouri); *Swoopes v. Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999) (Arizona).

### D.  Procedural Default

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  Like the exhaustion requirement, the procedural default doctrine was developed to facilitate the dual state/federal judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine.

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.  In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases.  When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights.  Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotations and citations omitted).

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision . . . .  For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (internal quotations and citations omitted).  *See also Dugger v. Adams*, 489 U.S. 401, 410, n. 6 (1989) (holding

that a state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases.").

Moreover, if a habeas applicant "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default." *Coleman*, 501 U.S. 722 at 735 n.1; *see also Harris v. Reed*, 489 U.S. 255, 269-70 (1989); *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citation omitted). Thus, if it is obvious that an unexhausted claim would be procedurally barred in state court, the claim is subject to an anticipatory procedural bar and is procedurally barred from federal habeas review. *See, e.g.*, *Rea v. Suthers*, 402 F. App'x 329, 331 (10th Cir. 2010); *Burton v. Zavaras*, 340 F. App'x 453, 454 (10th Cir. 2009); *Williams v. Broaddus*, 331 F. App'x 560, 563 (10th Cir. 2009).

An applicant whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

To demonstrate cause for his procedural default, an applicant must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United*

*States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003).  "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted).  If an applicant can demonstrate cause, he also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *see also United States v. Cervini*, 379 F.3d 987, 991-92 (10th Cir. 2004).  A "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III.  ANALYSIS

As stated above, this Court may review only claims that have been fairly and properly reviewed by the state courts.  Because Applicant's claims in the instant Application are convoluted and repetitive, the Court will review the claims Applicant presented to the state courts to determine his eligibility for review here.

#### A.  Applicant's Direct Appeal

In his direct review, Applicant presented the following claims.

1. Mr. Quintana's statutory and federal and state speedy trial rights were violated.

2. The prosecution failed to prove beyond a reasonable doubt that Mr. Quintana committed second degree kidnaping against S.P.

    3.      Mr. Quintana's due process rights to a fair trial by an impartial jury were denied by the trial court's erroneous admission of irrelevant and highly prejudicial evidence of the defendant's purported gang affiliation and when several of the jurors witnessed the defendant in restrictive custody.

    4.      The trial court reversibly erred by failing to instruct the jury, over defense objection, on the lesser included offense (to first degree assault) of third degree assault.

    5.      The district court erred in entering inconsistent verdicts on both reckless and intentional mental states for the same act against the same victim.

Applicant's opening brief (direct review), Docket No. 12-2. All of these claims were reviewed by the CCA. Thus, these claims have been exhausted for purposes of federal habeas corpus review and may be reviewed on the merits.[1]

In his post-conviction proceeding, Applicant presented the following claims:

1.    Trial Counsel had a conflict of interest;

2.    Trial Counsel rendered ineffective assistance by failing to:

    A. remove jurors who allegedly saw Quintana in restrictive custody;

    B. protect Quintana's right to a speedy trial;

    C. provide Quintana with discovery before trial;

    D. prepare for trial;

    E. make an opening statement;

    F. investigate;

    G. effectively cross-examine certain witnesses;

    H. call favorable witnesses;

---

[1] Although the CCA declined to address the merits of Applicant's constitutional speedy trial claim, it did so in error as Applicant clearly raised a constitutional claim on direct appeal. *See* Docket No. 12-2, pp. 14-17. Respondents may reassert the defense of procedural default if the state court record supports such a claim.

        I. file a notice of appeal; and

        J. violated his "due process right to run an innocence defense."

3. The physicians who performed his competency evaluation were biased;

4. His sentence was illegal and violated the rules announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004); and

5. He received multiple punishments for the same offenses in violation of double jeopardy protections.

In its review of these claims, the CCA reviewed Applicant's ineffective assistance of counsel ("IAC") claims and denied them on the merits. It further determined that the district court properly denied claims 4 and 5 as successive because the claims were, or could have been, raised on direct appeal in accordance with Colo. R. Crim. P. 35(c)(3)(VI)-(VII) (a court must deny any claim that was, or could have been, raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant). Docket No. 12-8 at 17. It further concluded that it would not consider arguments raised for the first time on appeal in accordance with Colorado procedural law. *See Bethurum v. Zavaras,* 352 F. App'x 260, 263 (10th Cir. 2009) (recognizing Colorado appellate practice in which the court refused to consider an argument on appeal that had not been raised until the reply brief) (citing *People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990)); *Gross v. Michaud,* No. 09-1267, 2010 WL 97797, 7 (D. Colo. Jan. 11, 2010) (holding that failure to present claims to the Colorado Court of Appeals in a procedurally proper manner results in procedural default). Consequently, Applicant's IAC claims raised in his post-conviction proceeding have been exhausted and are ripe for review by this Court. Notwithstanding, claims 4 and 5 presented to the state courts in his post-conviction proceeding have been procedurally defaulted.

Moreover, any claims not identified as having been raised in either Applicant's direct appeal and/or his post-conviction proceeding as constitutional claims have been anticipatorily defaulted. In this regard, the Court may not dismiss claims for failure to exhaust state remedies if Mr. Quintana no longer has an adequate and effective state remedy available to him. *See Castille*, 489 U.S. at 351. However, no further state court remedy exists because any future claims would be denied as successive under Colo. R. Crim. P. 35(c) because they could have been presented in an appeal or postconviction proceeding previously brought. *See* Colo. Rev. Stat. § 35(c)(3)(VII). The Court notes that Rule 35(c)(3)(VII) is independent because it relies on state rather than federal law. The rule also is adequate because it is applied evenhandedly by Colorado courts. *See, e.g., People v. Vondra*, 240 P.3d 493, 494 (Colo. App. 2010) (applying Crim. P. Rule 35(c)(3)(VII) to reject claims that could have been raised in a prior proceeding).

Colorado's statute of limitations for collateral attacks is an independent and adequate state procedural ground as well. *See* Colo. Rev. Stat. § 16-5-402 (2014) (imposing a three-year limitation period for post conviction claims challenging non-class 1 felonies); *Klein v. Neal*, 45 F.3d 1395, 1398 (10th Cir. 1995). Mr. Quintana presents no argument that these state procedural rules are not independent and adequate.

Therefore, the claims that Mr. Quintana failed to present either in his direct appeal and/or his post-conviction proceeding are procedurally defaulted.

As a general rule, federal courts do not review issues that have been defaulted in state court on an independent and adequate state procedural ground unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991). Mr.

Quintana's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

To demonstrate cause for his procedural default, Mr. Quintana must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003). A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 411 U.S. at 496; *see also United States v. Cervini*, 379 F.3d 987, 991-92 (10th Cir. 2004). To demonstrate a fundamental miscarriage of justice, Mr. Quintana first must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Mr. Quintana then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327.

Mr. Quintana argues in his reply brief that his procedural defaults should be excused because direct appeal counsel was ineffective in failing to raise his claims on direct appeal. Appellate counsel's failure to raise a meritorious issue on direct appeal may constitute cause to excuse a procedural default. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Hammon v. Ward*, 466 F.3d 919, 925 (10th Cir. 2006). However, the claim that appellate counsel was constitutionally ineffective must itself be exhausted properly in the state courts. *Edwards*, 529 U.S. at 453. Mr. Quintana did not exhaust a

claim of ineffective assistance of appellate counsel claim in the state courts. See Docket No. 12-6 (opening brief filed in state post-conviction proceeding). He thus cannot rely on the ineffective assistance of appellate counsel to excuse his anticipatory procedural defaults. See *Edwards*, 529 U.S. at 453; see also *Livingston v. Kansas*, 407 F. App'x 267, 273 (10th Cir. 2010) (unpublished).

Mr. Quintana suggests that his procedural default should be excused because the state court denied his request for appointed post-conviction counsel. In *Martinez v. Ryan*, --- U.S. ----, 132 S. Ct. 1309 (2012), the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. The petitioner must also show that the underlying ineffective assistance of counsel claim is "substantial," *i.e.*, has "some merit." *Id.* at 1318. The holding in *Martinez* recognizes an exception to *Coleman v. Thompson*, 501 U.S. 722, 753-55 (1991). In *Coleman*, the Supreme Court stated that, given there is no constitutional right to counsel in a state collateral proceeding, an attorney's errors in the proceeding do not establish cause for a federal habeas petitioner's procedural default. See *Martinez*, 132 S. Ct. at 1315.

*Martinez* applies only when "the State [bars] the defendant from raising the claims on direct appeal," so that postconviction proceedings are an applicant's first opportunity to present an ineffective assistance of trial counsel claim. *Martinez*, 132 S. Ct. at 1320; see also *Trevino v. Thaler*, --- U.S. ----, 133 S. Ct. 1911, 1915 (2013) (extending *Martinez* to circumstances in which state law does not require claims of

17

ineffective assistance of trial counsel to be brought in collateral proceedings, but "make[s] it virtually impossible for an ineffective assistance claim to be presented on direct review" (quotation omitted)).

The Colorado Supreme Court "has expressed a preference for having ineffective assistance of counsel claims brought in Crim. P. 35(c) proceedings." *People v. Thomas*, 867 P.2d 880, 886 (Colo. 1994) (internal citations omitted); *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) ("In light of the considerations potentially involved in determining ineffective assistance, defendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal.")). "Review of a claim of ineffective assistance of trial counsel that is raised on direct appeal is limited to the existing record." *Downey v. People*, 25 P.3d 1200, 1202 n.3 (Colo. 2001) (citing *People v. Blehm*, 983 P.2d 779, 792-93 (Colo. 1999); *see also People v. Apodaca*, 998 P.2d 25, 29 (Colo. App.1999) (citing *Thomas*); *People v. Price*, 240 P.3d 557, 565 (Colo. App. 2010) ("Only 'in rare instances' are ineffective assistance of counsel claims presented so that they 'need no further [factual] development prior to review on direct appeal.'") (quoting *People v. Kelling*, 151 P.3d 650, 655 (Colo. App. 2006)).

Respondents have not addressed the applicability of *Martinez* to Applicant's IAC claims. The Court is reluctant to determine at this time, without the benefit of the state court record of Applicant's criminal proceeding, whether the procedurally defaulted ineffective assistance issues raised are substantial. Accordingly, the Court will defer ruling on whether Mr. Quintana has demonstrated cause for his procedurally defaulted IAC claims, pursuant to *Martinez v. Ryan*, pending the Court's receipt of the state court record.

Mr. Quintana fails to argue any basis for a finding of cause and prejudice or a fundamental miscarriage of justice with respect to his non-IAC defaulted claims in this action.  Therefore, because Mr. Quintana has failed to demonstrate cause and prejudice or a fundamental miscarriage of justice, the Court finds that these claims are procedurally barred and must be dismissed.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED** that, to the extent that Applicant is raising constitutional claims that are the same as those raised in his direct appeal, those claims are exhausted and are ripe for review on the merits.  It is further

**ORDERED** that, to the extent that Applicant is raising IAC claims that are the same as those raised in his post-conviction petition, those claims are exhausted and are ripe for review on the merits.  It is further

**ORDERED** that the Court defers ruling on the applicability of a procedural bar to IAC claims not raised in Applicant's post-conviction proceeding pending the Court's review of the state court record.  It is further

**ORDERED** that the remaining claims are procedurally defaulted and **DISMISSED**.  It is further

**ORDERED** that, within thirty days after the filing of the state court record, Respondents are directed to file an answer that complies with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses the merits of the claims that are ripe for review on the merits.  In the Answer, Respondents may include additional argument concerning the merits of the unexhausted IAC claims.  It is further

**ORDERED** that a traverse, if any, and only a traverse, may be filed by Applicant within thirty days of the filing of the answer.  It is further

**ORDERED** that within thirty days from the date of this Order the Respondents shall file with the Clerk of the Court, in electronic format if available, a copy of the complete record of Applicant's state court proceedings in Case No. 04CR2291, including all documents in the state court file and transcripts of all proceedings conducted in the state court, but excluding any physical evidence (as opposed to documentary evidence) not relevant to the asserted claims.  It is further

**ORDERED** that the Clerk of the Court is directed to send copies of this Order to the following:

(1) Clerk of the Court
    Denver City and County District Court
    520 West Colfax Avenue, Rm. 135
    Denver, Colorado 80204

(2) Court Services Manager
    State Court Administrator's Office
    101 W. Colfax, Ste. 500
    Denver, Colorado  80202.

DATED November 4, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge