**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-01569-PAB

ANGEL QUINTANA,

    Applicant,

v.

TRAVIS TRANI and
ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

**ORDER STAYING CASE**

    Applicant, Angel Quintana, a state prisoner in the custody of the Colorado Department of Corrections, currently is incarcerated at the Colorado State Penitentiary in Cañon City, Colorado. Applicant initiated this action by filing *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1] . He is serving a sentence imposed by the District Court for the City and County of Denver, Colorado in Case No. 04CR2291.

    On July 28, 2015, Magistrate Judge Gordon P. Gallagher directed respondents to file a Pre-Answer Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A). Respondents submitted a Pre-Answer Response on August 17, 2015 [Docket No. 12]. Applicant filed a Reply on September 3, 2015 [Docket No. 13].

    The Court must construe the Application liberally because Applicant is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall*

*v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not "assume the role of advocate for the *pro se* litigant." *See Hall*, 935 F.2d at 1110.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On direct appeal, the Colorado Court of Appeals described the relevant factual background for Mr. Quintana's convictions as follows:

I. Background

> After B.M. broke up with defendant at a local restaurant in Denver, B.M. and her sister, S.P. (the victims), drove to a different restaurant where they socialized with others in the restaurant's parking lot. B.M. was talking with T.S., a male friend of hers, in her car. T.S. was sitting in the driver's seat, and B.M. was crouched alongside him, "in the door jamb," showing him the televisions that were in the car. S.P. was in the passenger's seat of the car talking to another man. Shortly thereafter, B.M. saw defendant rapidly approaching, "yelling, cursing," and shooting at the car. Defendant shot approximately four bullets, one of which hit the window of the car door. T.S. jumped out of the car and ran away. As he was running away, defendant fired a shot in his direction, but T.S. was not hit.

> Defendant grabbed B.M., threw her into the driver's seat, got into the backseat of the car, and told her to drive. Evidence was conflicting whether defendant ordered S.P. to get into the car or whether S.P. was already in the car then. In any event, S.P., who was in the passenger's seat, screamed at defendant, asking him what he was doing, and in response, defendant hit her in the mouth. B.M., having driven a few feet, put the car in park, and told S.P. to get out of the car. When B.M. attempted to exit the car, defendant shot her in the hip. B.M. tried to run, but she fell down because her leg was numb from the gunshot wound. As S.P. came around the car to see if B.M. was okay, defendant picked up B.M. and put her in the passenger's seat of the car. He then put S.P. in the backseat of the car.

> Defendant drove the victims to a deserted field, put on gloves, and said that he had to kill B.M., because she had "f***** up" and tried "to play him," meaning that she had "made him feel stupid." However, defendant had no more bullets. B.M. said she was sorry and asked him to take her to the hospital. Defendant refused and instead took the victims to his mother's house where B.M. began "shaking really bad" and begged defendant to take her to the hospital. Eventually, defendant agreed to

2

> take B.M. to the hospital with the understanding that she would tell the police that she was shot in a drive-by shooting.
>
> Initially, both victims told the police that B.M. had been shot in a drive-by shooting. However, in a second interview with the police, B.M. admitted that defendant shot her, but did not provide defendant's last name.
>
> Defendant was charged with one count of criminal attempt to commit first degree murder against B.M., one count of first degree assault against B.M., and two counts of second degree kidnapping with a deadly weapon (one count against B.M. and one count against S.P.). After a trial, the jury found defendant not guilty of attempt to commit first degree murder, but guilty of the lesser included offense of criminal attempt to commit manslaughter. The jury also found defendant guilty of the remaining charges. Defendant was sentenced to a total of forty-eight years in the custody of the Department of Corrections.

Docket No. 12-3, pp. 2-4.

After unsuccessfully moving for a sentence reduction, Applicant filed a direct appeal. Docket No. 12-2 (opening brief). On October 28, 2010, the Colorado Court of Appeals affirmed. Docket No. 12-3 (*People v. Quintana*, No. 07CA1381 (Colo. Ct. App. Oct. 28, 2010) (not published)). On March 14, 2011, the Colorado Supreme Court denied *certiorari* review. Docket No. 12-5.

On January 3, 2012, Mr. Quintana filed a post-conviction motion pursuant to Rule 35 of the Colorado Rules of Criminal Procedure with the trial court. On August 17, 2012, the trial court denied the motion. On September 4, 2014, the Colorado Court of Appeals affirmed. Docket No. 12-8 (*People v. Quintana*, No. 12CA1926 (Colo. Ct. App. September 4, 2014) (not published)). The Colorado Supreme Court denied *certiorari* on April 20, 2015. Docket No. 12-10.

On July 23, 2015, Applicant filed his present Application under § 2254 in this action raising the following claims:

(1) speedy trial rights were violated;

(2) ineffective assistance of counsel:

    (A) first trial counsel:

        (i)  failed to completely investigate all lines of defense;

        (ii) deceived applicant into believing that counsel would present an innocence-based defense and that prior counsel withdrew based upon a witness conflict;

        (iii) failed to share exculpatory information;

        (iv) misinformed the trial court about his reasons for withdrawing; and

        (v) violated applicant's federal constitutional speedy trial right;

    (B) second trial counsel:

        (i) failed to file a motion to dismiss based on violation of speedy trial right;

        (ii) failed to pursue exculpatory evidence such as witnesses;

        (iii) failed to object to Applicant's arrest as illegal when there was evidence that he was not at the crime scene;

        (iv) failed to investigate and present the defenses of actual innocence, complete denial, and alibi;

        (v) failed to prove that the evidence against applicant was not overwhelming, applicant was not at the scene, and law enforcement coached the witnesses;

        (vi) "refused to confront personal knowledge of the prosecution's misconduct on record";

        (vii) failed to investigate the prosecution's plan to turn trial counsel against applicant by introducing threatening jail letters against applicant;

        (viii) "took part in hiding and not disclosing on record the fact that the prosecution presented him with a second coached letter of threats a week before trial started";

   (ix) made a judicial admission of applicant's guilt to the jury, which infringed on applicant's right to plead guilty and testify;

   (x) prejudiced applicant's appeal by "keep[ing] a lot of stuff of [sic] the record";

   (xi) had a complete breakdown in communication;

   (xii) violated the attorney-client privilege;

   (xiii) failed to investigate law enforcement witnesses at the jail and court house;

   (xiv) failed to challenge the imposition of three illegal sentence enhancers for a crime of violence, which were not determined by the jury;

   (xv) was not prepared for trial, failed to properly cross-examine witnesses to discover real reason for changing statements;

   (xvi) threatened applicant by telling him of his plan to secure a conviction;

   (xvii) refused to argue that no evidence supported the kidnapping charge;

   (xviii) failed to investigate the contamination of the crime scene;

   (xix) failed to challenge the inconsistent verdicts;

   (xx) had numerous conflicts of interest;

   (xxi) attempted to turn a favorable witness against applicant;

   (xxii) failed to raise certain issues on direct appeal;

   (xxiii) conflict of interest with the public defender's office; and

  (C) he was denied the right to post-conviction counsel;

(3) applicant's due process rights to plead guilty and testify were violated because counsel imposed a guilt-based defense on Applicant instead of presenting defenses of actual innocence and alibi;

5

(4) applicant's right to due process was violated when the court enhanced his sentence without the sentence enhancers being properly pled and proved;

(5) applicant's right to due process was violated because his second degree kidnapping conviction is not supported by sufficient evidence;

(6) applicant's right to due process was violated because the guilty verdicts for attempted manslaughter and first degree assault are inconsistent;

(7) applicant's right to due process was violated because the trial court:

    (A) refused applicant's access to discovery and transcripts;

    (B) denied applicant's right to counsel;

    (C) allowed the prosecution to question applicant's attorneys; and

    (D) was biased against Applicant.

Docket No. 1.

On November 4, 2015, the Court issued an Order dismissing some of Applicant's claims and directing Respondents to submit an answer on the merits as to the exhausted claims. Specifically, the Court deferred ruling on whether Mr. Quintana had demonstrated cause for his procedurally defaulted ineffective assistance of counsel claims pursuant to *Martinez v. Ryan*, --- U.S. ----, 132 S. Ct. 1309 (2012).

Applicant now has filed a Motion to Stay his 2254 Application while he attempts to exhaust his unexhausted claims in the Colorado state court. A federal habeas court may *sua sponte* stay a § 2254 Application where the applicant's return to federal court will be barred by the one-year limitation period. *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). However, because staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings, and undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state

court prior to filing his federal petition, "stay and abeyance should be available only in [the following] limited circumstances":  (1) the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in the state court; (2) the unexhausted claims are not "plainly meritless"; and, (3) the petitioner has not engaged in abusive litigation tactics or intentional delay.  *Rhines*, 544 U.S. at 277-78.

Mr. Quintana suggests that the state court denied his request for appointed post-conviction counsel and thus he was unable to properly present his claims.  Thus, the court finds that there may be good cause for Applicant to have failed to present his claims to the state courts.  The Court further finds that Mr. Quintana has not engaged in abusive litigation tactics or intentional delay.  Instead, he has acted with due diligence in attempting to exhaust state court remedies for his federal claims.  And, finally, it is not clear from the allegations of the § 2254 Application that all of Applicant's ineffective assistance of trial and appellate counsel claims are "plainly meritless."  *Rhines*, 544 U.S. at 277.  It is therefore

**ORDERED** that plaintiff's Motion to Stay My 2254 Motion in Order to Exhaust State Court Remedies [Docket No. 21] is granted.  It is further

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1] filed by Applicant Angel Quintana is **STAYED** pending the Colorado courts' determination of Applicant's state post-conviction motion presenting his unexhausted claims.  It is further

**ORDERED** that the parties shall notify the Court in writing of the Colorado Court of Appeals' decision **within five days after the decision issues** and shall provide the

Court a copy of the Colorado Court of Appeals' opinion.  The Court shall enter further orders in this case at that time.  It is further

**ORDERED** that Respondents shall notify the Court in writing if Applicant fails to file an appropriate post-conviction motion raising his unexhausted IAC claims within forty-five days from the date of this Order.  It is further

**ORDERED** that Applicant's Motion for Appointment of Counsel and Discovery [Docket No. 22] is **DENIED** as premature.  It is further

**ORDERED** that Respondents' Motion for Extension of Time to File Answer [Docket No. 23] is **DENIED** as moot.

**DATED**: December 28, 2015.

BY THE COURT:

s/Philip A. Brimmer
Philip A. Brimmer
United States District Judge