IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 15-cv-01569-PAB

ANGEL QUINTANA,

      Applicant,

v.

TRAVIS TRANI and
ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.
_____

### ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS
_____

      The matter before the Court is an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254, filed *pro* se, by Angel Quintana.  Docket No. 1.  Having

considered the Application, Respondents' Answer, Applicant's Traverse ("Reply"), and

the state court record, the Court denies the Application for the reasons discussed

below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

      Applicant was convicted by a jury in Denver District Court Case No. 04CR2291 of

criminal attempt to commit reckless manslaughter, first degree assault, and two counts

of second degree kidnapping with a deadly weapon.  (State Court Record ("R.), Court

File at 279-287).[1]   The Colorado Court of Appeals summarized the evidence at

Applicant's trial as follows:

_____

[1] For ease of reference, the Court's citation to page numbers in the state court file is to
the page numbers as reflected on the pdf.doc contained in the CD ROM submitted by
the Denver District Court.

After B.M. broke up with defendant at a local restaurant in Denver, B.M. and her sister, S.P. (the victims), drove to a different restaurant where they socialized with others in the restaurant's parking lot. B.M. was talking with T.S., a male friend of hers, in her car. T.S. was sitting in the driver's seat, and B.M. was crouched alongside him, "in the door jamb," showing him the televisions that were in the car. S.P. was in the passenger's seat of the car talking to another man. Shortly thereafter, B.M. saw defendant rapidly approaching, "yelling, cursing," and shooting at the car. Defendant shot approximately four bullets, one of which hit the window of the car door. T.S. jumped out of the car and ran away. As he was running away, defendant fired a shot in his direction, but T.S. was not hit.

Defendant grabbed B.M., threw her into the driver's seat, got into the backseat of the car, and told her to drive. Evidence was conflicting whether defendant ordered S.P. to get into the car or whether S.P. was already in the car then. In any event, S.P., who was in the passenger's seat, screamed at defendant, asking him what he was doing, and in response, defendant hit her in the mouth. B.M., having driven a few feet, put the car in park, and told S.P. to get out of the car. When B.M. attempted to exit the car, defendant shot her in the hip. B.M. tried to run, but she fell down because her leg was numb from the gunshot wound. As S.P. came around the car to see if B.M. was okay, defendant picked up B.M. and put her in the passenger's seat of the car. He then put S.P. in the backseat of the car.

Defendant drove the victims to a deserted field, put on gloves, and said that he had to kill B.M., because she had "f ***** up" and tried "to play him," meaning that she had "made him feel stupid." However, defendant had no more bullets. B.M. said she was sorry and asked him to take her to the hospital. Defendant refused and instead took the victims to his mother's house where B.M. began "shaking really bad" and begged defendant to take her to the hospital. Eventually, defendant agreed to take B.M. to the hospital with the understanding that she would tell the police that she was shot in a drive-by shooting.

Initially, both victims told the police that B.M. had been shot in a drive-by shooting. However, in a second interview with the police, B.M. admitted that defendant shot her, but did not provide defendant's last name.

Defendant was charged with one count of criminal attempt to commit first degree murder against B.M., one count of first degree assault against B.M., and two counts of second degree kidnapping with a deadly

_____

weapon (one count against B.M. and one count against S.P.).  After a trial, the jury found defendant not guilty of attempt to commit first degree murder, but guilty of the lesser included offense of criminal attempt to commit manslaughter.  The jury also found defendant guilty of the remaining charges.  Defendant was sentenced to a total of forty-eight years in the custody of the Department of Corrections.

Docket No. 12-3, at 2-4.  *See also* R., Court File at 296-97.

The Colorado Court of Appeals affirmed Applicant's convictions and sentence in *People v. Quintana* (*Quintana I*), No. 07CA1381 (Colo. Ct. App. Oct. 28, 2010) (unpublished)). Docket No. 12-3.  On March 14, 2011, the Colorado Supreme Court denied Applicant's petition for certiorari review.  Docket No. 12-5.

On January 3, 2012, Applicant filed a motion for state post-conviction relief pursuant to Colo. Crim. P. Rule 35(c), which the state district court denied.  The Colorado Court of Appeals affirmed in *People v. Quintana* (*Quintana II*), No. 12CA1926 (Colo. Ct. App. Sept. 4, 2014) (unpublished)).  Docket No. 12-8.  The Colorado Supreme Court denied Applicant's petition for certiorari review on April 20, 2015. Docket No. 12-10.

On July 23, 2015, Applicant filed a § 2254 Application purporting to raise approximately 36 claims for relief.  Docket No. 1.  After reviewing the Respondents' Pre-Answer Response and Applicant's Reply, the Court issued an order on November 4, 2015 dismissing several claims as procedurally barred.  Docket No. 19 at 12-19.   The Court further concluded that the following claims of trial court error, which are asserted in the § 2254 Application, were properly exhausted in Applicant's direct appeal proceeding and were ripe for review on the merits:

(1) Applicant's federal and state statutory speedy trial rights were violated;

(2) the prosecution failed to prove beyond a reasonable doubt that Applicant committed second degree kidnapping against S.P.

(3) The trial court erred in entering inconsistent verdicts on both reckless and intentional mental states for the same act against the same victim.

Docket No. 19 at 12-13, 19; *see also Quintana I*, Docket No. 12-3.

Although Applicant exhausted two additional claims in his direct appeal proceeding, he did not raise them in the § 2254 Application.[2] Respondents state in the Answer that they have not addressed the merits of claims that were exhausted in the Colorado appellate courts, but not asserted in the § 2254 Application. Docket No. 39 at 4 n.3. In the Reply, Applicant does not dispute Respondents' statement or contend that he meant to assert the omitted claims in his Application. *See* Docket No. 43 at 3, summarizing the claims raised by Applicant. Consequently, the Court's review of claims of trial court error is limited to the three claims identified above.

The Court further concluded in the November 4 Order that the following Sixth Amendment claims asserted by Applicant were presented to the Colorado Court of Appeals in Applicant's first state post-conviction proceeding, and were properly exhausted in the state courts:

(4) Trial counsel was operating under a conflict of interest.

(5) Trial counsel was constitutionally ineffective in failing to:

(a) remove jurors who saw Applicant in restrictive custody;
(b) protect Applicant's right to a speedy trial;

---

[2] Applicant asserted the following additional claims on direct appeal: (1) his due process rights to a fair trial and an impartial jury were denied by the trial court's erroneous admission of irrelevant and highly prejudicial evidence of the Applicant's purported gang affiliation and when several of the jurors witnessed the defendant in restrictive custody; and (2) the trial court erred by failing to instruct the jury, over defense objection, on the lesser included offense (to first degree assault) of third degree assault. Docket No. 12-3 at 14-23.

(c) provide Applicant with discovery before trial;
(d) prepare for trial;
(e) make an opening statement;
(f) investigate the case;
(g) effectively cross-examine certain witnesses;
(h) call witnesses favorable to the defense;
(i) file a notice of appeal;
(j) pursue an "innocence" defense.

Docket No. 19 at 13-14; *Quintana II*, Docket No. 12-8, at 3, 6-13.

The Court also determined that Applicant presented other ineffective assistance claims that were not exhausted in the state courts and, therefore, were anticipatorily procedurally defaulted. Docket No. 19 at 4-5, 15-19. However, because Applicant was not represented by counsel in his state post-conviction proceeding, the Court deferred ruling on the claims pending a determination of whether there was cause for the procedural default under the standard articulated in *Martinez v. Ryan*, 566 U.S. 19 (2012). *Id.* at 17-18. In *Martinez*, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 17.

Respondents were directed to file an Answer addressing the merits of the claims delineated above, and to address whether the procedurally defaulted ineffective assistance claims are substantial under *Martinez*. *Id.* at 19.

Thereafter, Applicant filed a motion to stay the § 2254 Application so he could attempt to exhaust his unexhausted ineffective assistance claims in a second post-conviction motion he had filed in the state courts. Docket No. 21. On December 28, 2015, the Court issued an order staying the case pending the Colorado courts'

determination of Applicant's second post-conviction motion. Docket No. 24. The Colorado Court of Appeals issued a decision affirming the state district court's denial of post-conviction relief on March 15, 2018. *See People v. Angel Quintana* (*Quintana III*), No. 16CA0469 (Colo. App. March 15, 2018) (unpublished) Docket No. 28-1. Applicant's petition for certiorari review was denied on September 17, 2018. Docket No. 34-1.

On November 18, 2018, Respondents filed an Answer addressing the merits of the properly exhausted claims and the applicability of *Martinez* to the unexhausted claims. Docket No. 39. Applicant filed a Reply on January 11, 2019. Docket No. 43.

## II. APPLICABLE LEGAL STANDARDS

### A. <u>28 U.S.C. § 2254</u>

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be

an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time of the relevant state court decision. *See Greene v. Fisher*, 565 U.S. 34 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases
> where the facts are at least closely-related or similar to the case *sub
> judice*. Although the legal rule at issue need not have had its genesis in
> the closely-related or similar factual context, the Supreme Court must
> have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id.* at

1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases or (b) the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent.
> *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to the
> facts. *Id.* at 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.

Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The federal habeas court applies a *de novo* standard of review to constitutional claims that were not reviewed on the merits by the state courts. *See Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001).

**B. *Pro Se* Litigant**

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not

alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle an applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III. ANALYSIS OF CLAIMS

### A. <u>Claim One</u>

For his first claim, Applicant asserts that his federal and state statutory speedy trial rights were violated by the state district court.

Federal habeas review is limited to claims that a state prisoner's custody violates the United States Constitution or other federal law. 28 U.S.C. § 2254(a). Alleged errors of state law are not cognizable in a federal habeas proceeding. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *see also Estelle v. Mcguire*, 502 U.S. 62, 67 (1991) (habeas corpus does not lie to correct errors of state law). Therefore, the portion of claim one asserting a violation of the state speedy trial statute is dismissed for lack of statutory jurisdiction.

Respondents argue in their Answer that the federal constitutional speedy trial claim was procedurally defaulted in the state courts. Docket No. 39 at 12-13. Although Respondents did not raise the procedural defense in the pre-answer response, the Court indicated a willingness to address the defense if it were raised in the Answer. *See* Docket No. 19 at 13 n.1.

A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is barred from federal habeas review unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the federal violation, or that failure to consider the claim will result in a

fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007). A procedural rule is independent if it is based upon state law, rather than federal law. *Anderson v. Att'y Gen.*, 342 F.3d 1140, 1143 (10th Cir. 2003) (citing *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir.1998)). A state procedural rule is adequate if it was "'firmly established and regularly followed by the time as of which it is to be applied.'" *Id.* (quoting *Walker v. Att'y Gen.*, 167 F.3d 1339, 1344 (10th Cir.1999)). The applicant bears the burden of specifically alleging the inadequacy of a state procedural law. *Fairchild v. Workman*, 579 F.3d 1134, 1143 (10th Cir. 2009).

The Colorado Court of Appeals declined to address the alleged federal constitutional speedy trial violation on direct appeal because Applicant failed to raise the issue in the trial court. Docket No. 12-3 at 8, citing *People v. Cass*, 68 P.3d 537, 539 (Colo. App. 2002); *People v. Scialabba*, 55 P.3d 207, 209-10 (Colo. App. 2002). The state appellate court's procedural ruling is independent of federal law and firmly established in Colorado. *See id.*; *see also See Martinez v. People*, 244 P.3d 135, 139 (Colo. 2010) (stating that "appellate courts should not reach Constitutional arguments raised for the first time on appeal") (citing *People v. Cagle,* 751 P.2d 614 (Colo.1988) (it is axiomatic that an appellate court will not consider constitutional issues not raised in the trial court)).

Respondents placed Applicant on notice of the procedural default standard in the pre-answer response. *See* Docket No. 12 at 14-16. Applicant recognized in his reply brief that he must satisfy the cause and prejudice standard or the fundamental miscarriage of justice exception to excuse a procedural default. *See* Docket No. 13 at

6. However, he failed to satisfy either standard with respect to any of his defaulted claims. *See generally* Docket No. 19 at 15-17. Consequently, the portion of claim one asserting a violation of Applicant's federal constitutional speedy trial rights will be dismissed with prejudice as procedurally barred.

## B. Claim Two

For his second claim, Applicant asserts that the prosecution failed to prove beyond a reasonable doubt that he committed second degree kidnapping against S.P. Docket No. 1 at 17-18.

### 1. Supreme Court law

A constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979). Evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in the original). The court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence. *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required.").

A federal habeas court's review under *Jackson* is "sharply limited, and a court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record-that the trier of fact resolved any

such conflicts in favor of the prosecution, and must defer to that resolution." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (quotations and alterations omitted). *See also Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (in reviewing the sufficiency of the evidence, the federal habeas court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'") (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

"[F]ederal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Johnson*, 566 U.S. at 655. To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

"[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Johnson,* 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2010) (other internal citation omitted).

### 2. *State court proceeding*

The Colorado Court of Appeals applied a state law sufficiency-of-the-evidence standard similar to the *Jackson* standard and rejected Applicant's claim on the following grounds:

III. Sufficiency of the Evidence

Defendant next contends that his conviction for second degree kidnapping of S.P. should be overturned because the trial evidence failed to establish beyond a reasonable doubt that defendant "seized and carried" S.P. by the use of a deadly weapon. We disagree.

. . . .

Second degree kidnapping occurs when a person "knowingly seizes and carries any person from one place to another, without his consent and without lawful justification." § 18-3-302(1), C.R.S. 2010. Second degree kidnapping is a class three felony if the kidnapping is "accomplished by the use of a deadly weapon." § 18-3-302(4)(a)(II), C.R.S. 2010.

Defendant argues that there was no evidence to support the jury's finding that he "seized and carried" S.P. "against her will" by use of a deadly weapon and that, to the contrary, the evidence demonstrated that S.P. voluntarily accompanied defendant into the car "out of concern for B.M.'s well being." We are not persuaded.

The "seize and carry," also known as asportation, element is satisfied when a defendant moves a victim from one place to another. *People v. Harlan*, 8 P.3d 448, 477 (Colo. 2000). The movement does not need to be substantial and may be incidental to another crime. *People v. Owens*, 97 P.3d 227, 235 (Colo. App. 2004). When it is unclear whether the movement is sufficient, asportation may be established by proof that the movement substantially increased the risk of harm to the victim. *Harlan*, 8 P.3d at 477; *People v. Fuller*, 791 P.2d 702, 706 (Colo. 1990); *Owens*, 97 P.3d at 235, 237.

Here, B.M. testified that defendant, while holding a loaded gun, told S.P. to get into the car. After B.M. drove the car a few feet, defendant hit S.P. in the mouth, and B.M. stopped the car and told S.P. to get out. While B.M. was trying to escape from the car, defendant shot her. S.P. then exited the car and came to B.M.'s aid. Defendant picked up B.M. and put her in the passenger seat of the car and then defendant put S.P. in the back seat of the car.

S.P.'s trial testimony was slightly different. S.P. testified that she was sitting in the car when defendant jumped into the car and told B.M. to drive. After defendant punched S.P. in the mouth, she "ran" out of the car because she thought defendant was going to shoot her. Defendant then told her to get back into the car, and after she did, defendant drove the car away. S.P. testified that she did not want to leave with defendant, but that she got back into the car because (1) defendant told her that they had to go, (2) she was not going to let defendant leave alone with B.M., and (3)

she did not want B.M. to die. She also stated that she would not have gotten back into the car if defendant had not had a gun.

Crediting either version of the events, the jury reasonably could have found sufficient asportation to support a kidnapping with a deadly weapon conviction with respect to S.P. S.P. did not voluntarily get back into the car; rather, she either (1) was ordered to do so and complied because defendant had a gun and she did not want B.M. to be alone with defendant, or (2) was physically placed in the car by defendant. As a result, S.P. was moved "from place to place," and that movement substantially increased the risk of harm to her by placing her in a confined space, with no means of escape from the armed individual who had just struck her. *See People v. Rogers*, 220 P.3d 931, 935-36 (Colo. App. 2008) (the victim was moved within her apartment to an area farther away from doors and windows, from which it was more difficult to escape, substantially increasing the risk of harm to the victim); *Owens*, 97 P.3d at 236 (the victims were backed into an office and threatened with a knife); *People v. Huggins*, 825 P.2d 1024, 1026 (Colo. App. 1991) (the defendant forced victim to move ten steps to a space that offered no practical means of escape). In addition, defendant held a gun during the entire criminal episode, which supports the jury's finding that defendant kidnapped S.P. by the use of a deadly weapon.

Furthermore, although there was evidence that S.P. got back into the car after B.M. was shot, the evidence also showed that S.P. did so only because she was concerned about B.M.'s welfare and was afraid of great harm to B.M., which was sufficient for a jury finding on the asportation element. *See People v. Abbott*, 690 P.2d 1263, 1270 n.4 (Colo. 1984) (that movement was made at suggestion of manager out of fear of harm to himself and co-workers did not absolve the defendant of the asportation). Under these circumstances, the jury could have determined that her actions were not voluntary but were coerced.

We therefore conclude that sufficient evidence supported the conviction of second degree kidnapping of S.P. by use of a deadly weapon.

(*Quintana I*, Docket No. 12-3, at 8-13).

### 3. Analysis

The Colorado Court of Appeals' factual findings are presumed correct and are supported by the victims' testimony at Applicant's trial. R., 1/11/06 Trial Tr. at 496-510 (Byrna Meiklejohn testimony); 1/12/06 Trial Tr. at 669-70 (Stephanie Pryztulski testimony). Applicant maintains that the asportation element of

second-degree kidnapping was not established because "at no point did S.P. say that the petitioner forced h[e]r in the car and at no point in S.P.['s] testimony did she ever allege I used or threatened the use of a weapon ag[ain]st he r. . . . She stated she got back in the car upon her own free will and choice." Docket No. 1 at 18. However, regardless of whether Applicant verbally threatened to use his gun against S.P., he had already shot B.M. in S.P.'s presence and punched S.P. in the mouth. Even if the jury credited S.P.'s version of the events over the testimony of B.M., the jury's resolution of the discrepancies was "within the bounds of reason" because S.P.'s testimony created a reasonable inference that S.P. did not get back into the car voluntarily, but rather did so because Applicant had a gun, which he had already used on B.M. and would use to harm S.P., or to harm B.M. again, if S.P. did not comply with his directive.

The Court finds that the state appellate court's determination that either S.P.'s or B.M.'s testimony was legally sufficient to meet the asportation element of second-degree kidnapping with regard to S.P. and to sustain the jury's verdict on that charge was a reasonable application of the *Jackson* standard.

Applicant is not entitled to federal habeas relief for his second claim.

## C. **Claim Three**

In claim three, Applicant contends that the trial court erred in entering inconsistent verdicts on both reckless and intentional mental states for the same act against the same victim. Docket No. 1 at 19.

The Colorado Court of Appeals determined, under applicable Colorado law, that the verdicts finding Applicant guilty of both reckless (attempted reckless manslaughter)

and intentional (first degree assault) behavior for the same criminal act were not inconsistent because an element of one of the crimes did not negate an element of the other. *Quintana I*, Docket No. 12-3 at 26-28.

The state appellate court's resolution of Applicant's claim on state law grounds is not reviewable by this Court. *Estelle*, 502 U.S. at 67-68; *see also Bradshaw*, 546 U.S. at 76.

Moreover, the Supreme Court has recognized that "'[c]onsistency in the verdict is not necessary.'" *United States v. Powell*, 469 U.S. 57, 62 (1984) (quoting *Dunn v. United States*, 284 U.S. 390, 394 (1932)). Consequently, the state appellate court's determination that the verdicts were not inconsistent was not contrary to, or an unreasonable application of, Supreme Court law. *See e.g., Bowser v. Boggs,* 20 F.3d 1060, 1065 (10th Cir. 1994) (concluding, on federal habeas review, that state appellate court's decision rejecting the petitioner's claim that the jury verdicts were inconsistent under state law did not run afoul of federal law) (pre-AEDPA case).

Applicant is not entitled to federal habeas relief for his third claim.

### D. Claim Four

In claim four, Applicant asserts that his Sixth Amendment right to the effective assistance of counsel was violated because trial counsel was operating under a conflict of interest which arose after the State confiscated letters from Applicant's cell in which he made threats against his trial counsel, the prosecutor, and the trial court. Docket No. 1 at 12-13. Applicant claims that defense counsel was not an effective advocate after being notified of the threatening letters and that counsel joined the prosecution's efforts to have Applicant convicted. *Id.* at 13-14.

### 1. *Supreme Court law*

The Sixth Amendment's guarantee of effective counsel includes the right to representation free from actual conflicts of interest. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The guarantee of effective counsel exists "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Thus, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

An actual conflict of interest is a "conflict that affected counsel's performance -- as opposed to a mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171. "[T]he possibility of conflict," the Supreme Court has stated, "is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). *See also United States v. Alvarez,* 137 F.3d 1249, 1252 (10th Cir.1998) (stating that a conflict of interest under *Cuyler* "results if counsel was forced to make choices advancing other interests to the detriment of his client."). The ineffectiveness of counsel is presumed where counsel "'actively represented conflicting interests' and 'an actual conflict of interest adversely affected [the defense] lawyer's performance.'"' *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. at 348, 350, which addressed a conflict of interest in the context of counsel's concurrent representation of multiple clients). The Supreme Court has not extended the holding in *Cuyler* outside the context of concurrent, multiple representation. *See Mickens*, 535 U.S. at 176.

It is beyond dispute that the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel," *Morris v. Slappy*, 461 U.S. 1, 13-14

& n.6 (1983), or that "a defendant will inexorably be represented by the lawyer whom he

prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Rather, "the appropriate

inquiry focuses on the adversarial process, not on the accused's relationship with his

lawyers as such." *Id.* at 160.

### 2. State court proceeding

The Colorado Court of Appeals rejected Applicant's conflict-of-interest

claim on the following grounds:

> Before trial, the prosecuting attorney informed the trial court and
> defense counsel that a piece of paper had been found in Quintana's cell,
> containing threats "to shoot numerous times the D[istrict] A[ttorney], the
> Public Defender[,] and the Judge." The trial court found that the situation
> did not warrant recusal because the note did not identify Quintana's trial
> counsel as the target; rather, the court stated that the note mentioned the
> "public defender," and could be the "angry musings" of a "young kid." The
> court further stated that it trusted that defense counsel would "evaluate the
> situation." Defense counsel did not indicate that he felt threatened by
> Quintana and the topic never came up again.

> Nothing in the record indicates that the note created an actual
> conflict of interest, requiring defense counsel to withdraw. The note
> created, at best, a potential for a conflict, which never came to fruition.
> *See People v. Hagos*, 250 P.3d 596, 614 (Colo. App. 2009) (stating that,
> to obtain reversal, a defendant must show that his counsel was subject to
> an actual conflict of interest that adversely affected counsel's
> representation of the defendant). Further, Quintana's postconviction claim
> failed to allege any facts indicating that he authored the note or that
> defense counsel was, or believed he was, the target of any threat.[3]
> Accordingly, this allegation is conclusory and the district court did not err
> in summarily denying it.

> To the extent Quintana asserts that the alleged conflict caused
> defense counsel to threaten him, the record also refutes this claim. During
> trial, Quintana told the trial court that defense counsel stated to him: "I'm
> going to make sure you're going to get -- I'm going to make sure you get

---

[3] The Colorado Court of Appeals' decision included the following footnote:
"Indeed, the record demonstrates that Quintana was represented by two public
defenders and a private defense attorney before Quintana's trial counsel was appointed
as alternate defense counsel." Docket No. 12-8 at 7.

everything you deserve and you eat everything." Counsel explained to the court:

> I think I can clear this up, Your Honor. My client simply asked me if he was going to be able to look at discovery when the case is over with. He mentioned a handful of interviews and things like that that were [on] CD. I turned to him very quickly, because I was in the middle of trying to prepare for my closing and also listen to [the prosecutor].
>
> I turned to him and said, "You're going to get everything, all the discovery that I have." And I said nothing about eating anything, so I don't really know where that stems from. But, obviously, I will let my client have everything, once the case is done.
>
> The trial court rejected Quintana's assertion and found "that counsel was competent, in fact, more than competent" in representing Quintana at trial. The trial court's finding supports the postconviction court's conclusion that the record "belies any claim that defense counsel directly or indirectly threatened [Quintana] and/or the assertion that counsel's representation was compromised by a conflict or breakdown of communication." Accordingly, we will not disturb it on appeal.

*Quintana II*, Docket No. 12-8 at 6-8.

### 3. Analysis

The Colorado Court of Appeals' findings that the threatening letter did not create an actual conflict of interest between defense counsel and Applicant, and that defense counsel did not threaten Applicant because of the letters, were a reasonable interpretation of the pre-trial and trial proceedings. *See* R., 11/07/05 Hrg. Tr. at 261-263; 1/17/06 Trial Tr. at 1079-81. There is nothing in the state court record to suggest that the threatening letter adversely affected counsel's performance at trial. Indeed, in response to Applicant's complaints about counsel on the second day of trial, the trial court told Applicant: "I have observed [defense counsel's] abilities to assist you to select a jury, to cross-examine witnesses, and I find them to be exemplary." R. 1/12/06 Trial

Tr. at 654-55. At the conclusion of Applicant's trial, when Applicant complained that trial counsel had threatened him, the trial court stated: "I already found that counsel was competent, in fact, more than competent, and I'm not going to delve into that any further." R., 1/17/06 Trial Tr. at 1081. The Court's careful review of the record indicates that defense counsel was a zealous advocate for Applicant throughout the proceeding. Whatever antagonism may have existed between Applicant and defense counsel did not prejudice Applicant at trial.

The Court finds and concludes that the Colorado Court of Appeals' decision that there was no actual conflict of interest that impeded defense counsel's performance was not contrary to, or an unreasonable application of, Supreme Court law.

Applicant is not entitled to federal habeas relief for his claim.

### E. Claim Five

In claim five, Applicant contends that trial counsel was constitutionally ineffective in failing to: (a) remove jurors who saw Applicant in restrictive custody; (b) protect Applicant's right to a speedy trial; (c) provide Applicant with discovery before trial; (d) prepare for trial; (e) make an opening statement; (f) investigate the case; (g) effectively cross-examine certain witnesses; (h) call witnesses favorable to the defense; (i) file a notice of appeal; and (j) pursue an "innocence" defense.

*Strickland* sets forth a two-part inquiry for ineffective assistance of counsel claims. A petitioner must show both that (1) his counsel's performance was deficient (i.e., that identified acts and omissions were outside the wide range of professionally competent assistance), and (2) he was prejudiced by the deficient performance (i.e., there is a reasonable probability that, but for counsel's unprofessional errors, the result

would have been different).  *Strickland*, 466 U.S. at 685-86.

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).  *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  In other words, there is a rebuttable presumption that "an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct might have been part of a sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis omitted).  "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.  The federal habeas court's review of the state appellate court's disposition of an ineffective assistance claim under the AEDPA is "doubly deferential."  *Cullen,* 563 U.S. at 190.  The court "defer[s] to the state court's determination that counsel's performance was not deficient and, further, defer[s] to the attorney's decision in how to best represent a client."  *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018) (internal quotation marks and citations omitted).

"With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable."  *Id.* at 693.

### 1.  *Failure to remove jurors who saw Applicant in restrictive custody*

The state court record reflects that after the jury went to deliberate, the trial court addressed Applicant's claim that a juror saw him in handcuffs and a red jail jumpsuit early in the morning on the first day of his trial.  R., 1/17/06 Trial Tr. at 1073-77.  A

sergeant with the Denver Sheriff's Office, who is responsible for arranging the transport of detainees to court appearances, testified that Applicant had never been transported to the courtroom in jail attire -- only in civilian clothes. *Id.* at 1082-86 (Connie Coyle testimony). She further testified that a juror standing in the hallway outside of the sheriff's office could not have seen Applicant inside the holding cell wearing a red jumpsuit before trial and that, while Applicant was wearing his red jumpsuit, he was not present in any location where the public had access. *Id.* at 1087-88, 1089-90. The sergeant also testified that a criminal defendant is brought down the hall in handcuffs to the courtroom for trial only after the jurors are inside the jury room. *Id.* at 1082-86. Defense counsel informed the court that he had no specific recollection or knowledge that Applicant was seen by a juror in handcuffs or a jumpsuit, but he brought the issue to the trial court's attention at Applicant's request. *Id.* at 1041-42, 1094. The trial court ruled that the evidence did not support Applicant's claim that a juror saw him wearing a red jumpsuit or handcuffs; and, alternatively, that even if Applicant was briefly exposed to a juror wearing handcuffs or jail attire, he was not prejudiced at trial as a result. *Id.* at 1095-96.

The Colorado Court of Appeals reviewed Applicant's claim under the *Strickland* standard and rejected it on the following grounds:

> The *Quintana I* division also concluded that "there was no factual foundation" for Quintana's claim that the jurors saw him either in handcuffs or prison attire. *Id.* The division further stated that the exposure, if any, was inadvertent and brief, and thus, there was no reasonable probability that the viewing contributed to Quintana's conviction or deprived him of a fair trial. *Id.*

> Because Quintana relies on the same underlying facts and does not allege any prejudice beyond that which he asserted on direct appeal,

his postconviction claims are "merely a reformulation" of claims that were raised and rejected on direct appeal [citing Crim. P. 35(c)(3)(VI)].

*Quintana II*, Docket No. 12-8 at 4-5, 9-10.

The state court record reflects that defense counsel brought Applicant's concerns to the trial court's attention, the trial court held a hearing, received witness testimony and argument, and concluded that Applicant's allegations did not warrant the removal of the juror who allegedly saw Applicant in handcuffs or jail attire. Applicant does not state what additional specific conduct counsel should have taken to have the juror removed. *See Cummings v. Sirmons,* 506 F.3d 1211, 1233-1234 (10th Cir. 2007) (rejecting ineffective-assistance claim because "[w]ithout a more precise identification of what [deficiencies petitioner] is referring to," no prejudice can be found)**;** *Snow v. Sirmons*, 474 F.3d 693, 724-25 (10th Cir. 2007) (rejecting ineffective-assistance claim where habeas petitioner failed to indicate "why counsel's failure to object to the evidence was deficient . . .").

Further, Applicant fails to establish that, even if a juror briefly saw him in handcuffs or prison attire, there is a reasonable probability that the limited sighting affected the outcome of his trial. *See U.S. v. Simpson,* 950 F.2d 1519, 1522 (10th Cir. 1991) ("an isolated view by jurors of a defendant in handcuffs does not justify a new trial in the absence of a showing of actual prejudice") (collecting cases); *see also Ghent v. Woodford,* 279 F.3d 1121, 1133 (9th Cir. 2002) (jury's "brief or inadvertent glimpse" of a shackled defendant in the hallway is not presumptively prejudicial); *see U.S. v. Traeger,* 289 F.3d 461, 473 (7th Cir. 2002) (juror's brief view of the defendant in custody outside the courtroom is not sufficient to establish prejudice warranting a new trial). Applicant's conclusory allegations of prejudice are insufficient to satisfy the *Strickland*

standard. *See Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017) (mere speculation that a defendant has been prejudiced by counsel's conduct is insufficient under *Strickland*); *Byrd v. Workman*, 645 F.3d 1159, 1168-69 (10th Cir. 2011) (same).

The Court finds that the Colorado Court of Appeals' resolution of the ineffective assistance claim was consistent with *Strickland*. Therefore, Applicant is not entitled to federal habeas relief.

### 2. *Failure to protect Applicant's right to a speedy trial*

In *Quintana II*, the Colorado Court of Appeals rejected Applicant's ineffective assistance claim because a panel of the appellate court concluded in *Quintana I* that Applicant signed a waiver of his right to speedy trial until February 23, 2006 and trial commenced in January 2006. Docket No. 12-8 at 9. The state appellate court further determined that Applicant relied on the same underlying facts as presented in his direct appeal proceeding and did "not allege prejudice beyond that which he asserted on direct appeal." *Id*.

The Colorado Court of Appeals' factual findings in *Quintana I* that Applicant signed a written waiver of his state statutory speedy trial right and trial was then held within the applicable six-month period are presumed correct and are supported by the state court record. Applicant signed a written waiver of speedy trial on August 23, 2005, which continued the speedy trial deadline to February 23, 2006. R., Court File at 214; 8/23/05 Hrg. Tr.; 10/3/05 Hrg. Tr. Applicant's assertion in the Reply that counsel "forged" the speedy trial waiver is not supported by any specific facts and, therefore, does not constitute the clear and convincing evidence necessary to refute the state appellate court's factual findings. *See* 28 U.S.C. § 2254(e)(1). Further, the trial

continuance was necessitated by second appointed counsel's withdrawal from the case due to a conflict of interest and the need to appoint Applicant new counsel. R., 8/23/05 Hrg. Tr.; Court File at 196.

Trial counsel's failure to file an unmeritorious motion to dismiss the criminal charges based on a violation of Applicant's state speedy trial right did not constitute ineffective assistance. *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [petitioner] could not demonstrate an error entitling him to relief."); *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) ("[I]f the issue is meritless, its omission will not constitute deficient performance.").

The Court finds that the Colorado Court of Appeals reasonably applied *Strickland* in rejecting Applicant claim. Consequently, Applicant is not entitled to federal habeas relief.

### 3. Failure to provide Applicant with discovery before trial; to prepare for trial; to make an opening statement; to investigate the case; to effectively cross-examine certain witnesses; to call favorable witnesses; and to file a timely notice of appeal

The Colorado Court of Appeals reviewed the above allegations under the *Strickland* standard and determined the following:

> Other than bare assertions of error, Quintana provided no detail explaining why any of counsel's alleged omissions constituted ineffective assistance. *See, e.g., People v. Krueger*, 2012 COA 80, ¶ 17 (a criminal defendant who is represented by counsel does not have an unqualified right to review personally all discovery materials; rather, trial counsel's decision whether to provide his client with discovery materials constitutes a matter of trial strategy and judgment that ultimately lies within counsel's

discretion); *People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (where defendant failed to explain what investigation counsel should have done, what the results of those efforts would have been, and how they would have affected the outcome of the case, allegations were conclusory and insufficient to demonstrate that the record might contain specific facts that would substantiate his claims).

Regardless of whether any of the alleged omissions constituted deficient performance, however, Quintana's postconviction motion failed to allege a reasonable probability of prejudice. *See Strickland*, 466 U.S. at 694. That is, other than bare allegations that counsel's actions prejudiced him, he does not state how or why the result of the proceeding would have been different "but for counsel's unprofessional errors." *Id.* For example, he did not allege what prejudice he suffered as a result of counsel's decision not to make an opening statement or share discovery. Nor did Quintana articulate why the outcome of the proceeding would have changed had counsel conducted his cross-examination in a different fashion. And although Quintana names allegedly favorable witnesses that counsel did not call, he does not elaborate on what they would have said or how their testimony would have changed the outcome of his trial.

True, counsel did not timely file a notice of appeal. But the record demonstrates that Quintana was not prejudiced by this omission. The Office of the Public Defender filed a direct appeal, which a division of this court accepted as timely and considered on the merits.

Because these claims were conclusory and failed to allege *Strickland* prejudice, the district court was correct in summarily denying them. *See People v. Osorio*, 170 P.3d 796, 800 (Colo. App. 2007) (district court did not err in summarily denying claims that were conclusory and lacked supporting detail).

*Quintana II*, Docket No. 12-8 at 10-12.

The Court finds that the Colorado Court of Appeals' determination of Applicant's ineffective assistance allegations comported with Supreme Court law. As discussed previously, conclusory assertions of deficient performance and prejudice are insufficient to state an actionable claim under *Strickland. See Cummings,* 506 F.3d at 1233-34; *Snow*, 474 F.3d at 724-25; *Ellis,* 872 F.3d at 1084; *Byrd*, 645 F.3d at 1168-69. Therefore, Applicant is not entitled to federal habeas relief.

### 4. Failure to pursue an "innocence" defense

The Colorado Court of Appeals applied the *Strickland* standard and resolved

Applicant's claim on the following grounds:

> To the extent Quintana argues that the manner in which trial counsel questioned the victim was contrary to Quintana's "right" to present an innocence-based defense, we disagree. There is no fundamental right to present an innocence-based defense. *People v. Bergerud*, 223 P.3d 686, 699 n.10 (Colo. 2010) (declining to add a fundamental right to choose whether to pursue an "innocence-based" defense "to the list of those already entrusted to the defendant alone"). While "[c]ounsel cannot concede [a] defendant's guilt to a crime over his express objection," *id.* at 699, the actions of counsel must amount to a judicial admission of guilt, thereby relieving the prosecution of its burden of proof and infringing on the defendant's exclusive rights to testify or enter a plea. *See id.* at 699-700. "A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *Id.* at 700 (internal quotation marks omitted).

> Beyond asserting that he "had nothing to do with" the crimes for which he was charged, Quintana does not state what his "innocence-based" defense would have been. He does not allege, for instance, that he acted in self-defense or that he was not present at the time of the shooting. His claim is, at best, conclusory. And although Quintana claims that, by successfully arguing for the lesser offense of attempted reckless manslaughter, counsel told the jury that he was guilty, we conclude that counsel did not make a judicial admission of Quintana's guilt. Rather, counsel successfully argued for an outright acquittal on the charged offense of attempted first degree murder, presenting an argument regarding disputed facts and how evidence of those facts might be interpreted by the jury. *See Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) (distinguishing between guilty pleas and requests that a jury consider lesser included offenses by noting that, in the case of the latter, a defendant "retains the opportunity to advocate for outright acquittal"). On this record, we cannot conclude that counsel was constitutionally ineffective.

*Quintana II*, Docket No. 12-8 at 4-5, 12-14.

In his Reply, Applicant argues that the Colorado Court of Appeals' determination was contrary to, and an unreasonable application of, *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018).  Docket No. 43 at 15-16.

In *McCoy*, the defendant-appellant moved for a new trial, arguing that his constitutional rights were violated when the trial court allowed prior defense counsel to concede during the guilt phase of a capital trial, over defendant's "intransigent and unambiguous objection," that defendant committed the three murders of which he was convicted.  138 S. Ct. at 1503, 1506-07.  Trial counsel's strategy was to argue that McCoy's mental state prevented him from forming the specific intent necessary for a first-degree murder conviction.  *Id.*  The Supreme Court held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty."  *Id.* at 1505.  The Supreme Court reasoned that while "[t]rial management is the lawyer's province," including decisions as to "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence," a criminal defendant is entitled to "[a]utonomy to decide that the objective of the defense is to assert innocence."  *Id* at 1508.  The Court explained that the decision to maintain one's innocence is not a "strategic choice[ ] about how best to achieve a client's objectives; [it is a] choice[s] about what the client's objectives in fact are."  *Id.*  The Court concluded that "[b]ecause a client's autonomy, not counsel's competence, is in issue," neither the *Strickland* standard, nor *United States v. Cronic,* 466 U.S. 648 (1984), apply.  *Id.* at 1510-11.  Instead, "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our

decisions have called 'structural'; when present, such an error is not subject to harmless-error review." *Id. at* 1511.

Because *McCoy* was decided after completion of Applicant's first state post-conviction proceeding, the decision does not provide the clearly established law applicable to Applicant's ineffective assistance claim. *See Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003) (stating that "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"); *Stevens v. Ortiz,* 465 F.3d 1229, 1235-38 (10th Cir. 2006) (same). Moreover, *McCoy* is factually distinguishable because Applicant was not charged with capital offenses and his trial counsel did not expressly admit Applicant's guilt to the charge of criminal attempt to commit first degree murder, but instead argued for an acquittal.

Prior to *McCoy*, the Supreme Court held in *Florida v. Nixon,* 543 U.S. 175 (2004), that defense counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient. In *Nixon,* the Supreme Court recognized that a criminal defendant has "'the ultimate authority' to determine "'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'" *Nixon*, 543 U.S. at 187 (quoting *Jones v. Barnes,* 463 U.S. 745, 751 (1983)). Therefore, an attorney must both consult with the defendant and obtain consent as to these decisions. *Id.* The Supreme Court rejected the Florida Supreme Court's conclusion that defense counsel's statements to the jury were the "functional equivalent of a guilty plea" because, despite counsel's concession, "Nixon retained the rights accorded to a defendant in a criminal

trial." *Id.* at 188 (citing *Boykin v. Alabama*, 238 U.S. at 242-243, and n. 4 (1969)) (a guilty plea is "more than a confession which admits that the accused did various acts," it is a "stipulation that no proof by the prosecution need be advanced") (internal quotation marks omitted)). The Court concluded that under the circumstances -- i.e., the defense attorney consulted with Mr. Nixon about his proposed trial strategy, and Nixon was unresponsive -- defense counsel was not required to gain express consent from Mr. Nixon before conceding his guilt. *Id.* at 189. The Court further concluded that the *Strickland* standard was applicable to Nixon's claim and that defense counsel's strategy of conceding guilt did not constitute deficient performance in the context of a capital case because "the gravity of a potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus." *Id.* at 189-91. The Court observed that "such a concession in a run-of-the-mine trial might present a closer question." *Id.* at 190.

The only clearly established rule of law from *Florida v. Nixon* applicable in this non-death penalty case is that Applicant's ineffective assistance claim is governed by *Strickland*. *See Nixon*, 543 U.S. at 187. *See also Bergerud v. Falk*, 642 F. App'x 864, 869 (10th Cir. Mar. 4, 2016) (unpublished) ("[I]n *Nixon*, the Court did not analyze a stand-alone right for a criminal defendant to be consulted by his attorney. Rather, the Court addressed the claim in the broader context of ineffective assistance of counsel under *Strickland*."). The Court further observes that the exception to *Strickland* articulated in *Cronic*, 466 U.S. at 658-59, does not apply where, as here, the state court record reflects that the prosecution's case against Applicant was subjected to meaningful adversarial testing by defense counsel.

Under *Strickland*, the Court first considers whether defense counsel's strategic decision to argue the availability of a lesser included offense to the charge of attempted first degree murder over the Applicant's objection constituted deficient performance. At the time of Applicant's trial, Colorado law held that "the decision whether to request jury instructions on lesser offenses is a tactical decision that rests with defense counsel . . . ." A*rko*, 183 P.3d at 556. In *Arko*, the Colorado Supreme Court rejected the Colorado Court of Appeals' conclusion that the decision whether to request a lesser non-included offense instruction implicates a defendant's fundamental rights because it is more like a decision to plead guilty than a tactical decision:

> [T]he decision whether a lesser offense instruction should be requested is distinguishable from the decision to plead guilty. When a defendant pleads guilty, he waives all rights attendant to a jury trial. *See People v. Schneider*, 25 P.3d 755, 759-60 (Colo. 2001) ("A defendant entering a guilty plea waives the right to a speedy trial, the right to insist that the prosecution establish guilt beyond a reasonable doubt, and the right to present witnesses on behalf of the accused."). On the other hand, a defendant retains all of his trial rights when he requests that a jury consider a lesser offense instruction. He also retains the opportunity to advocate for outright acquittal. Thus, this decision is not analogous to the decision whether to plead guilty.

*Id.* at 558.

Pursuant to *Arko*, it was reasonable for Applicant's trial counsel to believe that his decision to argue a lesser included offense was within the purview of trial strategy.

Several federal appellate courts have held that a criminal defendant's counsel is not constitutionally ineffective in conceding a lesser-included offense when there is overwhelming evidence of the defendant's guilt. *See Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999) (recognizing that a decision to concede guilt on a lesser charge can be "a reasonable tactical retreat rather than a complete surrender."); *Underwood v.*

*Clark*, 939 F.2d 473, 474 (7th Cir. 1991) (conceding guilt of lesser included offense is "a sound tactic when the evidence is indeed overwhelming . . . and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury"); *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) (a decision to concede guilt on a lesser charge is a sound and reasonable tactic when there is overwhelming evidence of the defendant's guilt). *See also Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir. Feb. 8, 2016) (unpublished) (trial counsel was not ineffective in suggesting, in closing statement, that the jury might convict on a lesser included offense of murder if they found that petitioner killed the victim, given the evidence against petitioner and the capital murder charge); *Farrington v. Senkowski*, 214 F.3d 237, 244 (2d Cir. 2000) (explaining that counsel's concession of defendant's guilt on a lesser charge to induce the jury to acquit on more serious charges was an acceptable tactical decision and not ineffective assistance under *Strickland* ).

At trial, Applicant's girlfriend and her sister testified that Applicant ran toward the girlfriend's car, which was parked at a hamburger stand, and shot out the window of the driver's side while the girlfriend was sitting in the driver's seat. R., 1/11/06 Trial Tr., at 499-502 (Meiklejohn testimony); 1/12/06 Trial Tr., at 659-666 (Pryztulski testimony). When the girlfriend tried to exit the car, Applicant shot her in the right hip. R., 1/11/06 Trial Tr., at 506 (Meiklejohn testimony); 1/12/06 Trial Tr., at 669-70 (Pryztulski testimony). Applicant then drove the two women to a deserted field, put on gloves, and said that he "had to kill [the girlfriend]" because she had "f ***** up" and "played him stupid," but he was out of bullets. R., 1/11/06 Trial Tr., at 508-09 (Meiklejohn testimony). An emergency room physician testified that the victim suffered two gunshot

wounds to her right pelvis area which he described as a "serious bodily injury." R. 1/12/06 Trial Tr., at 760-68 (Bradley Simon testimony). The trial court denied defense counsel's motion for judgment of acquittal on the attempted first-degree murder charge, finding sufficient evidence to establish Applicant's intent to commit the offense. R., 1/13/06 Trial Tr. at 947-48. *See* Colo. Rev. Stat. § 18- 3-102(1) (murder in the first degree), § 18-2-101(1) (criminal attempt).

The nature of Applicant's intent was hotly disputed at trial. Defense counsel argued to the jury that Applicant did not act with deliberation or intent and that the jury should acquit on the charge of attempted first degree murder. R., 1/17/06 Trial Tr. at 1052-1057, 1061. Counsel further suggested that "attempted manslaughter" may have been proven by the prosecution. *Id.* at 1061. Counsel requested the lesser included offense instruction of attempted reckless manslaughter to give the jury a less drastic alternative than the choice between convicting Applicant of attempted first degree murder and outright acquittal. The Supreme Court has recognized the necessity of giving a lesser included offense instruction in these circumstances: "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble v. United States*, 412 U.S. 205, 212-13 (1973).

The Court finds that defense counsel's concession that the prosecution may have proven reckless manslaughter was a reasonable strategy based on the evidence of Applicant's guilt. The concession was not the functional equivalent of a guilty plea. *See Nixon,* 543 U.S. at 188; *Boykin*, 238 U.S. at 242-243 and n. 4. Further, Applicant has failed to demonstrate a reasonable probability that he would have been acquitted of

attempted first degree murder had the jury not been given the third option of attempted reckless manslaughter. As such, he has failed to satisfy the prejudice prong of the *Strickland* inquiry.

Finally, Applicant's contention that trial counsel conceded his guilt by failing to emphasize the lack of any forensic evidence placing Applicant at the crime scene (*see* Docket No. 1 at 9-10) is refuted by the state court record. Applicant's attorney called the lead detective in the case as a defense witness and questioned him about the lack of any physical evidence linking Applicant to the crimes. R., 1/13/06 Trial Tr. at 929-35, Mylous Yearling testimony. Moreover, there was substantial witness testimony identifying Applicant as the individual who was involved in the charged crimes. R., 1/11/06 Trial Tr. at 496-510 (Meiklejohn testimony); 1/12/06 Trial Tr. at 604-17, 696-701 (C.J. Anderson testimony), 657-670 (Pryztulski testimony), at 718-29 (Timothy Spikes testimony). Applicant has not met his burden to show that counsel's performance was deficient, or that he was prejudiced as a result.

The Court finds that the Colorado Court of Appeals correctly applied the *Strickland* standard in rejecting Applicant's claim that counsel failed to run an innocence-based defense over his objection. The Court further finds that the state appellate court's decision was not so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *See Harrington*, 562 U.S. at 102.

Applicant is not entitled to federal habeas relief for his claim.

## IV. PROCEDURALLY DEFAULTED INEFFECTIVE ASSISTANCE CLAIMS

In the November 5 Order, the Court identified several ineffective-assistance-of-counsel claims that were not exhausted in the state courts and, therefore, were anticipatorily procedurally defaulted. The Court further found that there might be cause for the procedural default under *Martinez v. Ryan* if the claims were substantial. Applicant later filed a second state post-conviction proceeding to raise the unexhausted claims. In *Quintana III,* the Colorado Court of Appeals rejected the ineffective assistance claims on state procedural grounds. *See* Docket No. 28-1.

The following ineffective-assistance claims remain procedurally defaulted: (1) counsel failed to object to Applicant's arrest as illegal when there was evidence that he was not at the crime scene, Docket No. 1 at 9; (2) counsel failed to make a record of prosecutorial misconduct of which counsel was aware, *id.* at 10; (3) counsel "made it a point to keep a lot of stuff of the record to obstruct Applicant's appeals process," *id.*; (4) counsel failed to challenge the trial court's imposition of an "illegal enhanced sentence based upon the crime of violence statute that failed to allege one of the aggravating factors in the charging information and the (COV) statute that was not separately brought before a jury for determination," *id.* at 11; (5) counsel misled Applicant about the number of prosecution witnesses who would testify against him, *id.*; (6) counsel failed to challenge the inconsistent verdicts, *id.* at 11, 19; and, (7) counsel attempted to turn a defense witness, Steve Muniz, into a prosecution witness. *Id.* at 11, 13. *See also* Docket No. 19 at 4-5, 15, 18.

Applicant has failed to meet his burden under *Strickland* to provide specific facts to show that defense counsel's performance was deficient and that he was prejudiced

as a result.  As discussed previously, vague and conclusory allegations of deficient

attorney performance and resulting prejudice do not meet the *Strickland* standard.  *See*

*Snow*, 474 F.3d at 724-25; *Cummings*, 506 F.3d at 1233-34; *Ellis,* 872 F.3d at 1084.

Moreover, Applicant's claim that counsel was ineffective in failing to challenge

the inconsistent verdicts is foreclosed by the Colorado Court of Appeals' conclusion in

*Quintana I* that the verdicts were not inconsistent under Colorado law.  *See* Docket No.

12-3 at 26-28.  Trial counsel's failure to raise an unmeritorious objection to the verdicts

was not constitute ineffective assistance.  *See Lafler*, 566 U.S. at 167; *Sperry*, 445 F.3d

at 1275; *Miller*, 354 F.3d at 1298.

With regard to Applicant's claim that defense counsel was ineffective in failing to

challenge the trial court's imposition of an "illegal enhanced sentence," part of the

underlying basis for this claim was addressed by the Colorado Court of Appeals in

*Quintana III* as a claim of trial court error.  The state appellate court concluded:

> Finally, the trial court properly rejected defendant's argument that
> the aggravated sentences for his kidnapping and assault convictions are
> illegal because the information did not include crime of violence counts for
> those charges.  Here, the information charged defendant with using a
> deadly weapon during the commission of first degree assault and both
> second degree kidnapping incidents, and the jury returned verdicts
> confirming that defendant used a deadly weapon during the commission of
> those offenses.  Therefore, because those crimes, when committed with a
> deadly weapon, require aggravated sentencing in accordance with the
> crime of violence statute, see § 18-1.3-406, they constitute per se crimes
> of violence for which the prosecution was not required to separately
> charge defendant.  §§ 18-3-202(1)(a), (2)(c), 18-3-302(4)(a)(II), (b); *see*
> *People v. Banks*, 9 P.3d 1125, 1129-30 & n.8 (Colo. 2000) (when a
> defendant is charged with certain offenses, including first degree assault
> and second degree kidnapping, that mandate aggravating sentencing
> under § 18-1.3-406 (formerly codified at § 16-11-309), the crime is
> referred to as a per se crime of violence and crime of violence counts do
> not need to be separately charged); *People v. Williams*, 23 P.3d 1229,
> 1234 (Colo. App. 2000) (first degree assault is a per se crime of violence).

*Quintana III*, Docket No. 28-1 at 5-6.

The Colorado Court of Appeals' determination, under Colorado law, that the prosecution was not required to charge Applicant with separate crime of violence counts relating to the charges of kidnapping and assault is not subject to review by the federal habeas court. *See Estelle*, 502 U.S. at 67-68; *Bradshaw,* 546 U.S. at 76. Because it would have been futile for defense counsel to object to Applicant's aggravated sentence on the basis that he was not charged with separate crime of violence counts, Applicant cannot establish that counsel's performance was deficient or that he was prejudiced as a result. *See Lafler*, 566 U.S. at 167; *Sperry,* 445 F.3d at 1275; *Miller*, 354 F.3d at 1298.

Further, to the extent Applicant contends that trial counsel was ineffective in failing to object to the sentencing enhancement under the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his argument also lacks merit. In *Apprendi*, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. The Colorado Court of Appeals determined in *Quintana III* that Applicant was convicted of *per se* crimes of violence. Under Colorado law, a *per se* crime of violence "requires no additional fact-finding for imposition of a mandatory sentence of at least the midpoint, but no more than twice, the maximum presumptive range." *Vogt v. Novak*, No. 04-1264, 153 F. App'x 474, 477 (10th Cir. 2005) (unpublished) (applying Colorado law). *See also People v. Terry,* 791 P.2d 374, 378 (Colo.1990) (determining that Colorado's sentencing scheme, which

mandates application of increased sentences for certain enumerated crimes, operated "not as a sentence-enhancing statute but as a presumptive penalty statute.").

There is nothing "illegal" about Applicant's sentence. The assault and kidnapping charges each carried presumptive range penalties of 10-32 years. *See* Colo. Rev. Stat. §§18-3-202(2)(c) and 18-3-302(4)(B)(II). Applicant's aggregate 48-year sentence was within the maximum sentencing range of 30-96 years authorized by Colorado's crime of violence statute, Colo. Rev. Stat. § 18-1.3-406. *See also* R., 6/29/06 Sentencing Hrg. Tr. at 1177-98.

In sum, the Court finds that the allegations of ineffective assistance of trial counsel that were procedurally defaulted in the state courts are not substantial claims within the meaning of *Martinez*. Therefore, the claims are dismissed as procedurally barred or, alternatively, on the merits.

## IV. ORDERS

For the reasons discussed above, it is

**ORDERED** that the clerk of the court shall amend the docket to reflect that the stay order, Docket No. 24, was lifted on September 29, 2018 when the Court directed Respondents to Answer the § 2254 Application. Docket No. 35. It is further

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1] filed *pro se* by Angel Quintana is DENIED and this action is DISMISSED WITH PREJUDICE. It is further

**ORDERED** that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C.

§ 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000).  It is further

ORDERED that that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.


DATED March 25, 2019.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge